**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**ROBERT B. CHAMBERS**                                                    **PLAINTIFF**

**VS.**                                    **CASE NO. 5:14CV00086 JLH-HDY**

**CONNIE WILKERSON, TYRESE**
**HEWING**                                                            **DEFENDANTS**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the
hearing before the District Judge in the form of an offer of
proof, and a copy, or the original, of any documentary or
other non-testimonial evidence desired to be introduced at
the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary

hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

Defendants Connie Wilkerson and Tyrese Hewing have filed separate motions for summary

judgment in this civil rights action brought by Robert B. Chambers.  Defendant Wilkerson is a nurse

at the Varner Unit of the Arkansas Department of Correction (ADC), and defendant Hewing is a

correctional officer at the Varner Unit.  The plaintiff is an inmate at the Varner Unit, and claims that

the defendants were deliberately indifferent to his serious medical needs on October 2, 2013.

Federal Rule of Civil Procedure 56 provides for the entry of summary judgment only in those

circumstances where there is no genuine issue of material fact, so that the dispute may be decided

on purely legal grounds.

This may occur when a plaintiff cannot demonstrate that a genuine fact issue exists.
But the party opposing the summary judgment must be given the benefit of all
favorable factual inferences, and summary judgment cannot be granted when the
non-movant shows that an alleged undisputed fact actually presents a triable issue.

*Holloway v. Lockhart, et al.*, 8l3 F.2d 874, 878 (8th Cir.l987) (citations omitted).  We are also

mindful that the *pro se* complaint is to be liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972), accepting as true each allegation contained therein, *see Chapman v. Musich*, 726 F.2d 405, 408 (8th Cir.), *cert. denied*, 469 U.S. 931 (1984).

In his complaint, Mr. Chambers alleges that at about 10:00 a.m. on October 2, 2013,[1] he was in his cell at the Varner Unit and informed Wilkerson that he was having chest pains and "felt like he was going to have a seizure." Complaint, page 4. Chambers, who alleges that he is an epileptic and is prescribed seizure medication, indicates that Wilkerson said she would return to his cell but did not do so. Thereafter, the plaintiff states that he collapsed and split his head on the concrete cell floor, then lay unconscious from 10:40 a.m. until 3:35 p.m. He alleges that Wilkerson, escorted by defendant Hewing, came by his cell around noon, observed him unconscious with blood on the floor, "and left him there to suffer." Complaint, page 4. Upon gaining consciousness, the plaintiff alleges that he saw his medication setting on the trap of his cell door. Thereafter, the plaintiff states that Wilkerson returned to the cell to assist with plaintiff's medical needs. The plaintiff recites that he asked Wilkerson why she did not help him earlier, and she replied that he was sleeping earlier on the cell floor. While taking his blood pressure, plaintiff alleges that Wilkerson knocked the seizure medication to the floor, then stated she would quickly return with more medication. However, Chambers alleges she did not return, she did not treat his head wounds, and he did not receive his seizure medication until the evening "pill call". Complaint, page 5.

**Motion for Summary Judgment of Defendant Hewing:** To support his motion, defendant Hewing has submitted a statement of material facts. Many of these assertions are unchallenged by

---

[1]The complaint alleged the incidents occurred on October 12, 2013, but the parties agree that October 2, 2013, was the date in question.

the plaintiff.  For example, it is undisputed that defendant Hewing, an ADC employee, is not a health care provider, and that he notified defendant Wilkerson, a nurse, on October 2, 2013, that Mr. Chambers was lying on the floor of his cell.  The parties agree that Chambers' feet were toward the door of his cell, and his head was closer to the bed.  The parties agree that Hewing and Wilkerson left the prescribed medication for Chambers in the door of the cell during the noon pill call period on October 2, 2013.  The lone disputed fact, according to Mr. Chambers, is that Hewing and Wilkerson "discovered Chambers face down on the concrete floor of his cell unconscious and unresponsive."  Docket entry no. 37, page 2.  According to Chambers' pleading, Hewing "deliberately disregarded an emergency situation" and, as a result, a reasonable jury could find for the plaintiff against defendant Hewing.

We disagree, and recommend that Hewing's motion for summary judgment be granted.  In order to demonstrate that Hewing was deliberately indifferent, Chambers must show (1) that he had an objectively serious medical need and (2) that Hewing knew of, but deliberately disregarded, that need.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Mr. Chambers demonstrates neither of the two requisite elements to show deliberate indifference.

The first showing required of Mr. Chambers is that he had an objectively serious medical need.  The allegation in the complaint that he was denied epilepsy medicine, split his forehead on the concrete cell floor, and was then denied medicine a second time, are altered by the plaintiff's own deposition testimony.  In his deposition, the plaintiff stated that he did not have epilepsy but took medication for his migraine headaches.  Docket entry no. 33-2, pages 3-4.  He further testified that, although he had no history of heart problems,  he told Nurse Wilkerson he had chest pains  on the morning of October 2, 2013, and she indicated she would return.  He stated he next woke up on

the floor of his cell face down, finding blood on his head, and seeing blood on the concrete floor.

Docket entry no. 33-2, page 9. According to the deposition, he then summoned help from ADC

officer Webb, who in turn summoned Nurse Wilkerson. Chambers asked Wilkerson why she had

not done anything for him and she replied that she observed him asleep. He countered that there was

blood beside his head, but conceded he could not "say for sure" Wilkerson could have seen any

blood. He also stated he thought stitches were in order but were not given, and he was treated by

cleaning the half inch to one inch area on his head and placing a band-aid on it. He agreed there

was no bruising. Docket entry no. 33-2, pages 17-18. Finally, he explained he was upset about the

potential effect Nurse Wilkerson's behavior might have in the future:

> Chambers: And my concern is, if it happened that time, what happens if
> something like that happened and it is life-threatening, and the only person I have to
> depend on is the nurse. And if that nurse's concerns are something other than my
> health and safety and well-being, then that leaves me in my cell wondering every
> day, you know, if an incident – every time I get to feeling bad or something like that,
> it makes me fear what could be the worst-case-scenario outcome of this right here.

> Attorney: Okay. So this occasion, there wasn't anything serious, but you're
> worried about, what if there is something serious?

> Chambers: It could have been serious.

> Attorney: It could have been?

> Chambers: It could have cost me my life.

> Attorney: Okay.

> Chambers: It could have cost me my life. And not just me. What about the

diabetics and everybody in there that does have serious conditions.

Docket entry no. 33-2, page 21.  Given the testimony of Mr. Chambers, we find that there is no material fact issue regarding the nature of his medical need.  Clearly, there was an issue, but the circumstances surrounding the issue do not support the notion that the medical need was obviously serious at the time Hewing and Wilkerson were at his cell.  Subsequently, the medical need was assessed and treated.  A serious medical need is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Vaughn v. Greene County, Ark.,* 438 F.3d 845, 851 (8th Cir.2006).  Here, defendant Hewing notified Wilkerson that Chambers was on the floor of his cell.  By doing so, Hewing fulfilled his duty, given that he is not medical personnel. *Holden v. Hirner*, 663 F.3d 336 (8th Cir. 2011).  We recommend that Hewing's motion for summary judgment be granted.

**Motion for Summary Judgment of Defendant Wilkerson:** Much of the discussion of defendant Hewing's motion for summary judgment applies to defendant Wilkerson.  Of primary importance is our finding  there is no factual dispute regarding the existence of a serious medical need on October 2, 2013.  This finding is dispositive with respect to Nurse Wilkerson's motion for summary judgment, and we recommend that her motion be granted on that basis.

We also note that Wilkerson's assessment  Chambers was asleep, with even breathing, in his cell on October 2, 2013, was, at most, an error in judgment.  Liberally construing the pleadings, such an error may have been negligent.  Negligence, however, does not constitute deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976). The Eighth Circuit Court of Appeals has addressed this issue:

An Eighth Amendment claim that prison officials were deliberately indifferent

to the medical needs of inmates involves both an objective and a subjective component. *Coleman,* 114 F.3d at 784. *See also Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs. *Coleman,* 114 F.3d at 784. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' " *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir.1996). As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. *Id.* Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *Estelle,* 429 U.S. at 104–05, 97 S.Ct. at 291–92. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S.Ct. at 292.

*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

**Conclusion:** Once a motion for summary judgment is made and supported, it places an affirmative duty of the non-moving party to "go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists." *See Uhiren v. Bristol-Meyers Squibb Company, Inc.*, 346 F.3d 824, 827 (8th Cir. 2003). "The non-movant must show there is sufficient evidence to support a jury verdict in [her] favor," and a "mere scintilla of evidence supporting the non-movant's position will not fulfill the non-movant's burden." *See Id.* [internal quotations omitted].

Mr. Chambers has not gone beyond his pleadings and presented affirmative evidence showing a genuine issue of material fact exists. He has not shown there is sufficient evidence to support a jury verdict in his favor against either Hewing or Wilkerson. There is no genuine issue

of material fact concerning the existence of a serious medical need on the part of Chambers, or on the issue of deliberate indifference on the part of Hewing and Wilkerson.

Accordingly, we recommend that the motion for summary judgment of the defendants be granted, and the case be dismissed with prejudice.

IT IS SO ORDERED this   12   day of February, 2015.

_____

UNITED STATES MAGISTRATE JUDGE